**The PEOPLE of the State of Colorado, Complainant**

v.

**Charles W. RASURE, Jr., Respondent.**

**No. 06PDJ088.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

May 30, 2007.

Attorney Regulation.  Following a hearing pursuant to C.R.C.P. 251.18, a Hearing Board suspended Charles W. Rasure, Jr. (Attorney Registration No. 25569) from the practice of law for a period of one year and one day.  The Colorado Supreme Court affirmed the Hearing Board's sanction on May

19, 2008. Respondent brought claims against persons who previously reported his misconduct in violation of C.R.C.P. 251.32(e). Respondent's misconduct constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. RPC 8.4(d).

On April 9–10, 2007, a Hearing Board composed of FRANCES L. WINSTON, a citizen Hearing Board member, and THOMAS J. OVERTON, a member of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the PDJ or the Court") held a Hearing pursuant to C.R.C.P. 251.18. Kim E. Ikeler, appeared on behalf of the Office of Attorney Regulation Counsel ("ORAC or the People"). Charles W. Rasure, Jr., (Respondent) appeared pro se. The Hearing Board issues the following Opinion and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19.

## OPINION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19

### I. *ISSUE/SUMMARY*

Supreme Court *disciplinary rules* prohibit a lawyer from filing a lawsuit against anyone predicated upon lawyer misconduct or lack of professionalism reported to the People *unless* the person reporting (1) fails to maintain confidentiality *and* (2) the communication is *in reckless disregard of the truth or in bad faith.* Respondent brought claims against persons who reported Respondent's misconduct. Did Respondent violate 251.32(e) by filing suit[1] against reporting parties after admitting the reported misconduct?

The Hearing Board finds clear and convincing evidence that Respondent violated C.R.C.P. 251.32(e).

Independent of C.R.C.P. 251.32(e), the Hearing Board also finds clear and convincing evidence that Respondent violated Colo. RPC 8.4(d), conduct prejudicial to the administration of justice. The Hearing Board finds that filing suit under the circumstances present here has a profound chilling affect on the

attorney regulation process and its ability to obtain information about lawyer misconduct.

The Hearing Board, however, cannot find clear and convincing evidence that Respondent violated Colo. RPC 3.1 by filing a frivolous lawsuit. Respondent's federal case against Sitter and McLachlan is still pending in federal district court where substantive legal issues are yet to be resolved.

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FOR ONE YEAR AND A DAY**

### II. *PROCEDURAL HISTORY*

On October 25, 2006, the People filed a complaint in this matter. Respondent filed his answer on November 20, 2006. The parties did not file any dispositive motions.

### III. *FINDINGS OF MATERIAL FACT*

The Hearing Board finds that the following facts have been established by clear and convincing evidence.

Respondent took and subscribed the oath of admission and gained admission to the Bar of the Colorado Supreme Court on May 15, 1995, and is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 25569, and is therefore subject to the jurisdiction of the Court. Respondent's registered business address is 679 E. Second Ave., Ste. 4, Durango, CO 81301.

*Background Concerning Respondent's Lawsuit*

In December 2001, Respondent and Thomas P. Dugan ("Dugan") terminated their relationship as co-owners in the law firm of Dugan & Rasure. Dugan purchased all of Respondent's shares in Dugan & Rasure as part of a stock purchase agreement. Respondent and Dugan further agreed that if Respondent took any case that belonged to the firm, Respondent would pay Dugan one-third of the attorney's fees "produced" from the case even though their partnership had ceased. One of the cases Respondent kept upon leaving Dugan & Rasure was the "Concordia case." This case was subject to the

---

1. Counts III and IV of Respondent's suit deal with alleged malicious prosecution and abuse of process based upon reports Sitter and McLach- lan made to the People, which ultimately led to disciplinary charges being filed against Respondent.

agreement that Respondent would pay Dugan one-third of the attorney's fees generated therefrom.

In November 2003, nearly three years after leaving Dugan & Rasure, Respondent settled the Concordia case and received a $200,000.00 settlement. Respondent placed these funds into his trust account and paid the client(s) their share from his trust account. Respondent then caused the remainder of the funds to be placed into his operating account. Respondent testified that he instructed his secretary, to pay Dugan an amount equal to one-third of the total fee, approximately $20,000 from his operating account.

However, Dugan was not paid, and Respondent used all these funds for his own purposes. Though Respondent settled the case, he did not tell Dugan about the Concordia settlement. Furthermore, Respondent never received or asked Dugan's permission to use any portion of Dugan's one-third share of the Concordia contingency fees.

On May 6, 2004, Dugan discovered from court records that Respondent had settled the Concordia matter without telling Dugan or otherwise paying Dugan his share of the contingency fees from the Concordia settlement.[2] Respondent admits that he misled Dugan concerning the progress of the Concordia settlement beginning in December 2003 until Dugan discovered from court records in May 2004 that Respondent had dismissed the case upon settlement of $200,000.00 .

After Dugan discovered that Respondent received settlement funds in the Concordia litigation without advising him, Dugan insisted Respondent pay Dugan his one-third share of the attorney's fees immediately. Dugan also sought assurances from Respondent that his money was in Respondent's trust account.[3] During this period of time, however, Respondent was having financial difficulties and could not pay Dugan as agreed. When Respondent did not deliver Dugan's share of the Concordia settlement,

Dugan contacted Michael McLachlan ("McLachlan"), a Durango attorney from whom Dugan sought both ethical and legal advice concerning his efforts to collect his share of the contingency fees from Respondent.

In seeking McLachlan's advise about collecting the Concordia contingency fees Respondent owed, Dugan provided McLachan a series of emails Dugan and Respondent exchanged concerning the Concordia contingency fees.[4] McLachlan read these emails and recognized what he considered to be an ethical issue because Respondent had not kept Dugan's share of the Concordia contingency fees in a trust account. McLachlan also spoke to Respondent's former secretary and others in Durango about other incidents including one involving Respondent's failure to place client funds in a trust account. Among the persons McLachlan contacted was Douglas Sitter ("Sitter"), a lawyer who was associated with Respondent in a firm that shared various expenses and a trust (COLTAF) account.

When McLachlan called Sitter, he did so in an effort to collect Dugan's contingency fees from Respondent on the Concordia settlement. McLachlan asked Sitter whether Respondent placed the Concordia settlement funds into the firm's COLTAF account. Based upon his conversations with McLachlan, Sitter was concerned that he may be implicated in Respondent's dispute with Dugan because of Sitter's business relationship with Respondent. Sitter then asked Respondent whether he had placed the Concordia settlement or contingency fees in the firm's COLTAF account. Respondent assured Sitter that the settlement funds were not placed into the firm's trust account but into his individual COLTAF account. Nevertheless, as a result of this conversation, Sitter decided that he could no longer trust Respondent and terminated their business relationship in May 2004.[5]

### Respondent Pays Dugan

On May 11, 2004, after conferring with McLachlan, Dugan emailed Respondent the following,

---

**2.** Exhibit 6.

**3.** Exhibit 10.

**4.** Exhibits 6–11.

**5.** Exhibit 14.

His (McLachlan's) advice is Grievance and the DA. Please think about this carefully. I do not want to hurt you, but this must be taken care of.[6]

On or about November 17, 2003, Respondent provided Dugan with a promissory note in the amount of $20,525.00, plus interest at the rate of 8% per annum from November 17, 2003.[7] On or about July 2004, Respondent completed paying Dugan his one-third share of the Concordia settlement from money he received on another contingent fee case. Although McLachlan encouraged Dugan to report Respondent's conduct to the People, Dugan did not do so.

### McLachlan Tells the People about Concordia and Other Matters

In November 2004, while representing a respondent in a disciplinary matter unrelated to Respondent, McLachlan told a member of the People's management staff that they should be looking at Respondent's conduct. In particular, McLachlan told ORAC that (1) Respondent had been censured by a judge in the four corners area, (2) he was subject to a restraining order, (3) he was in default on a bank loan, and (4) he had not paid Dugan his share of the fees in the Concordia litigation. These statements were all substantially true.

### Sitter Answers the People's Inquires

Sitter, at McLachlan's suggestion, called the CBA Ethics Hotline concerning his duties and received the same advice that McLachlan offered: report the matter to the People. Nevertheless, Sitter decided not to report Respondent to the People.

On November 22, 2004, in response to an inquiry from the People, Sitter reluctantly sent a letter to the People concerning his knowledge of Respondent's activities concerning the Concordia matter. Sitter's reluctance stemmed from his fear that Respondent would retaliate if he cooperated with the

People. In his letter to the People, Sitter explained that most of his information came from others who *claimed* to know what Respondent had done. Sitter further explained that he had been a partner of Respondent's and that Respondent claimed to have a "legitimate dispute" about fees with Dugan about the Concordia contingency fees.[8]

### The Formal Complaint Based on the Concordia Issue

On November 23, 2005, the People filed a formal complaint against Respondent, 05PDJ081, which alleged in part that Respondent had converted Dugan's share of the contingency fees in violation of Colo. RPC 8.4(c). The People also alleged that Respondent violated Colo. RPC 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in misleading Dugan concerning the Concordia settlement. In addition, the People alleged Respondent violated Colo. RPC 1.15(a)(b) and (c) in that Respondent failed to properly separate Dugan's fees from his own.

On April 14, 2006, after mediating the matter, Respondent, his counsel, and the People entered a stipulation concerning Respondent's conduct involving the Concordia contingency fees. In the stipulation, Respondent admitted violating C.R.C.P. 251.5, Colo. RPC 8.4(c) and 1.15(c). Respondent also admitted the following facts:

> In his March 14, 2006 Order re: Judgment on the Pleadings (this as the People's Motion)[9] the Presiding Disciplinary Judge found that respondent's statements to Dugan about the status of the Concordia settlement from December 2003 through early May 2004 were false and that respondent did not correct these false statements until May 2004. Based on this and related findings, the Presiding Disciplinary Judge held that respondent violated Rule 8.4(c).[10]

6. Exhibit 11.

7. Exhibit 15.

8. Exhibit 17.

9. Respondent also filed a motion for summary judgment. The Court denied that motion.

10. Exhibit 21, Stipulation, Agreement and Affidavit containing the Respondent's Conditional Admission of Misconduct, paragraph o. Respondent also stipulated to a one year and one day suspension, stayed upon successful completion of a one-year probation with conditions.

Respondent also admitted that he violated Colo. RPC 1.15(c) when he failed to keep Dugan's fees separate and apart from his own until there was an accounting of the funds he owed Dugan.[11] Based upon Respondent's admission, the People agreed to dismiss the "knowing" conversion claim under Colo. RPC 8.4(c), Claim V in the People's complaint, as part of the settlement.[12] Respondent also agreed that he should be suspended for one year and one day and that the suspension should be stayed upon successful completion of a one-year probation, with conditions.[13] One of the conditions of Respondent's probation was that he *not engage in any conduct* which results in the imposition of discipline under C.R.C.P. 251.6 or 251.7.

### Respondent Files Suit Against McLachlan and Sitter

On August 3, 2006, four months after entering into the stipulation as described above, Respondent, *pro se,* filed a civil action against Sitter and McLachlan in the United States District Court for the District of Colorado.[14] Counts III and IV of Respondent's federal lawsuit alleged that McLachlan and Sitter caused the People to bring a "quasi-criminal" case (05PDJ081) against him that resulted "substantially" in Respondent's favor and that "Sitter and McLachlan intentionally caused the People to initiate disciplinary proceedings against Rasure." Respondent, however, did not file suit against Dugan, the person who initially released information about Respondent's conduct in the Concordia matter to McLachlin.

Before filing his federal case, Respondent testified that he exhaustively researched C.R.C.P. 251.32(e) and the substantive case law in Colorado on malicious prosecution and abuse of process. However, Respondent did not seek advice or counsel about his proposed lawsuit and the implications of doing so in light of the provisions of C.R.C.P. 251.32(e). As a result of the filing of Respondent's federal lawsuit, both McLachlan and Sitter

have hired attorneys and incurred legal expenses in the tens of thousands of dollars for their defense. This lawsuit is still pending in federal district court.

In addition to the malicious prosecution and abuse of process claims, Respondent's lawsuit also charges that McLachlan and Sitter engaged in slander, civil conspiracy, intentional interference with contract, and extreme and outrageous conduct. These claims reference facts that are included in Respondent's claim that McLachlan and Sitter caused the People to bring disciplinary charges arising out of the Concordia matter.

### McLachlan and Sitter's Statements to the People

When McLachlan and Sitter reported Respondent's conduct concerning the Concordia litigation, they did so based upon information they believed to be true and under their duty to report professional misconduct as provided in Colo. RPC 8.3. The initial source of this information appears to be Dugan.

Before formal charges were filed against Respondent, Sitter did tell the following people about the information he reported to the People: his secretary, Ms. Smith, Dolores Kansky, Scott Macock and Douglas Ware. McLachlan, on the other hand, told no one about the information he reported to the People after formal charges were filed against Respondent related to the Concordia dispute between Dugan and Respondent. The record is not clear on how much of this information was disseminated in and about Durango before the People filed formal charges against Respondent.

When speaking to the People in November 2004, McLachlan advised that he had heard a number of complaints about Respondent that were of concern to him. Specifically, McLachlan reported the following:

1. Respondent was in default on an $80,000.00 loan to the Bank of the San Juans.

---

11. Exhibit 21.

12. Absent compelling evidence in mitigation, knowing conversion would result in disbarment.

13. Exhibit 19.

14. Exhibit 23.

2. A judge in the four corners area had sanctioned Respondent.

3. Respondent was the subject of a restraining order.

4. Respondent had mishandled his COLTAF funds, including those he received in the Concordia litigation.

### Respondent's Testimony

Respondent testified that neither McLachlan nor Sitter knew anything about the stock purchase agreement between Dugan and Respondent when they communicated with the People on their knowledge of the Concordia matter. Respondent's position is that the stock purchase agreement and its provision on sharing contingency fees with Dugan were *contractual* in nature and that any money due under the agreement represented a *contractual obligation and not an ethical one.* Respondent testified that since McLachlan and Sitter did not review the stock purchase agreement, their statements to the People as well as statements that Respondent *converted* funds were either reckless, in bad faith, or both.

In addition to Respondent's argument that his obligation to Dugan was contractual based upon the stock purchase agreement, Respondent also testified that McLachlan and Sitter's demeaning and factually incorrect comments about him in and about Durango before and after the People filed a formal complaint against him show a pattern of reckless and bad faith communications. He argues that if McLachlan and Sitter acted recklessly and in bad faith before and after reporting him to the People, they must have acted in a similar manner when they reported the Concordia matter to them.

Respondent also claims that Sitter was his lawyer when Respondent made statements concerning the Concordia settlement. Further, Respondent testified that when Sitter reported these discussions to the People; he violated his duty to keep Respondent's disclosures confidential. Nevertheless, when Respondent initially responded to the People concerning the allegations Sitter made

against him on or about December 22, 2004, Respondent mentioned nothing of an attorney client relationship between himself and Sitter.[15] It was not until August 28, 2006 that Respondent raised the issue of Sitter violating his duty to maintain confidentiality under Colo. RPC 1.6.[16]

## IV. CONCLUSIONS OF LAW— SUBSTANTIVE ALLEGATIONS

### Claim I, Colo. RPC 3.1

█ In Claim I, the People charged Respondent with violation of Colo. RPC 3.1, which prohibits a lawyer from bringing or asserting a frivolous claim, unless there is a good faith argument for an extension of the law. The People ask the Hearing Board to find Respondent's lawsuit frivolous because C.R.C.P. 251.32(e) precludes Respondent from bringing such an action. After carefully considering the pleadings in Respondent's federal case, which raise broader issues than the matters before this Hearing Board, the Hearing Board cannot conclude by clear and convincing evidence that Respondent violated Colo. RPC 3.1.

The Hearing Board agrees that C.R.C.P. 251.32(e) may preclude a lawyer licensed in Colorado from bringing suit against a citizen predicated on a report of alleged lawyer misconduct to the People. However, C.R.C.P. 251.32(e) is not, a substitute for substantive rules of law on the issues of malicious prosecution and abuse of process. The federal court is in the best position to resolve those issues based upon substantive law federal law.

Furthermore, the federal case that the People claim to be frivolous has yet to be resolved. *See In the Matter of Smith,* 989 P.2d 165, 170 (Colo.1999). The Hearing Board cannot speculate on whether the federal court will find Respondent's case frivolous.

### Claim I, Colo. RPC 8.4(d)

█ Claim I also charges that Respondent violated Colo. RPC 8.4(d) by engaging

---

**15.** Exhibit 18.

**16.** Exhibit 25.

in conduct that is prejudicial to the administration of justice. The Hearing Board finds clear and convincing evidence on this claim independent of a C.R.C.P. 251.32(e) violation. Whether Respondent ultimately proves his federal case or not, he has nevertheless engaged in conduct that prejudices the administration of justice and the disciplinary process. While the Hearing Board is reluctant to find clear and convincing evidence that Respondent violated Colo. RPC 3.1, such is not the case with Respondent's conduct in retaliating against Sitter and McLachlan. Furthermore, C.R.C.P. 251.32(e) is mandatory as to all lawyers licensed to practice law in Colorado and does not rely upon an analysis of the merits of any substantive claim.

Upon accepting a license to practice law, a lawyer is granted certain rights and privileges not afforded to other citizens. At the same time, a lawyer gives up certain rights that may be afforded to other citizens. One such right is access to the courts when C.R.C.P. 251.32(e) is implicated. Without this rule the public's willingness to participate in the attorney regulation process would be chilled. This rule may create a hardship in some cases because it denies attorneys access to the courts in narrow instances. But such a rule is necessary to promote the citizen cooperation in attorney discipline matters.

While the Colorado Supreme Court in its plenary authority over lawyer conduct has precluded lawyers from suing anyone who reports lawyer misconduct, it has also protects the lawyer's right to bring suit if the reporting party acts in bad faith or in reckless disregard of the truth. *See* C.R.C.P. 251.31(b).

The Respondent has the burden of proving that the reporting parties' communications with the People are reckless or in bad faith. He has failed to meet this burden. To the contrary, the Hearing Board finds that the clear and convincing evidence shows McLachlan and Sitter truthfully related information they relied on in good faith.

On the other hand, Respondent admitted dishonesty in his failure to honor his agreement with his former partner in the Concordia matter. Knowingly filing suit against McLachlan and Sitter under these circumstances belies Respondent's claim that he acted in good faith and in compliance with the mandates of C.R.C.P. 251.32(e) when he filed suit against them.

### Claim I, C.R.C.P. 251.5(c)

■ C.R.C.P. 251.5(c) states that it is misconduct for any attorney to engage in any act that violates the *disciplinary procedural rules.* C.R.C.P. 251.32(e) is such a rule. For the reasons stated above, the Hearing Board finds that when Respondent filed counts III and IV in his federal lawsuit against McLachlan and Sitter, he violated C.R.C.P. 251.32(e) and thereby violated C.R.C.P. 251.5(c).

## V. ANALYSIS

While the Hearing Board finds that there is not clear and convincing evidence that Respondent's violated Colo. RPC 3.1, Respondent violated his duty to obey Supreme Court rules, including C.R.C.P. 251.32(e). This duty is not founded on whether his suit against McLachlan and Sitter is meritorious under substantive rules. Instead, C.R.C.P. 251.32(e) deals with broader policy and ethical issues; one of those issues is the integrity and effective administration of the attorney regulation system. C.R.C.P. 251.32(e) mandates that all lawyers give up their her right to sue reporting parties unless the lawyer proves that the reporting parties communicated with the People in reckless disregard of the truth or in bad faith. Neither of those circumstances applies here.

## VI. SANCTIONS

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose,* 69 P.3d 43, 46–47 (Colo. 2003). In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating

and mitigating evidence pursuant to ABA *Standard* 3.0.

Under ABA Standard 6.22, suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

The People cite *In re Smith*, 830 P.2d 1003 (Colo.1992), and correctly point out that Smith was disbarred in a case that involved a claim that he brought suit against the parties who reported alleged misconduct on his part to the People. The *Smith* case, however, is inapposite here for the following reasons: (1) C.R.C.P. 251.32(e), unlike the rule applicable at the time Smith was disbarred, allows attorneys to bring an action against anyone who communicates with the People in reckless disregard of the truth or in bad faith; and (2) Smith was disbarred reciprocally in Colorado because he had violated a federal court order suspending his right to practice. Thus, the Colorado Supreme Court never addressed whether the Hearing Board's recommended sanction of a suspension for a year and a day was appropriate for Smith for violating a rule that provided *absolute immunity* to parties who reported lawyer misconduct to the People. Thus, the facts and the law in *Smith* were different than those present in this case.

Therefore, the Hearing Board does not rely on *Smith* in determining the appropriate sanction here. Nevertheless, the Hearing Board finds Respondent knowingly brought suit against McLachlan and Sitter without objectively showing they acted recklessly or in bad faith. While C.R.C.P. 251.32(e) allows for a narrow exception to the rule, Respondent had *no rational basis* to claim the exception applied. Instead, the Hearing Board finds that Respondent filed Counts III and IV *predicated* on McLachlan and Sitter's communications with the People and in retaliation for doing so.

### Duties Breached

■ Respondent owes a duty to the profession, the Colorado Supreme Court, and the citizens of this state to follow the rules promulgated by the Court.

### State of Mind

Respondent acted knowingly; that is, he was aware of his conduct in filing a federal suit against McLachlan and Sitter but without the conscious objective of violating C.R.C.P. 251.32(e) or Colo. RPC 8.4(d). Respondent also acted with intent; that is, his conscious objective was to benefit himself financially or otherwise (Respondent requested monetary damages in his federal lawsuit) by filing suit against McLachlan and Sitter. *See* ABA *Standard,* Definitions and 6.21.

### Injury

The injury Respondent caused is substantial. Most important is the damage and potential Respondent caused to the integrity of the attorney disciplinary system. The profession, citizens, and courts have a reasonable expectation that Respondent and other lawyers will follow the Colorado Supreme Court's direction. Respondent's actions have financial and emotionally damaged McLachlan and Sitter and could potentially damage the legal profession and the public's confidence in the integrity of our system.

### Aggravating Factors ABA Standard 9.22

(a) Prior disciplinary offense. The prior discipline is directly related to his conduct in this case.

(g) Refusal to acknowledge wrongful nature of conduct.

(h) Substantial experience in the practice of trust law.

### Mitigating Factors ABA Standard 9.32

None.

The ABA *Standards* state that the presumptive sanction here is suspension. The undisputed facts show Respondent retaliated against those who reported his misconduct to the People. The conduct McLachlan and Sitter reported was essentially the same conduct Respondent admitted in his stipulation.

Respondent received notice in the signed stipulation that he was not to engage in *any conduct* that would result in discipline. Violating C.R.C.P. 251.32(e) is precisely the kind

of conduct that could result in discipline. Respondent was also warned that he was violating this rule by persisting in claims in federal court against McLachlan and Sitter.[17] Nevertheless, Respondent continued to press forward on his suit against McLachlan and Sitter.[18]

Respondent admittedly read C.R.C.P. 251.32(e) before he filed suit against McLachlan and Sitter. He knew or should have known that in order to file suit against them and avoid the immunity provisions of C.R.C.P. 251.32(e), he had to prove that they had acted in reckless disregard of the truth or in bad faith. Respondent also knew that he had essentially admitted the conduct that McLachlan and Sitter had reported. Even if Respondent had no duty to affirmatively prove these circumstances, the record here is clear and convincing; McLachlan and Sitter acted properly in cooperating and reporting Respondent to the People.

Respondent is clearly angry and upset that McLachlan and Sitter discussed his conduct concerning the Concordia case and other cases with residents of Durango. Indeed, Respondent called a witness who credibly testified that shortly before this hearing, McLachlan told the witness that Respondent would be "disbarred" for converting funds.

■ Respondent *may* have a substantive right to bring a suit against Sitter and McLachlin because he *believes* they are spreading rumors about him that are not true. But in order to support an affirmative defense under C.R.C.P. 251.32(e), a lawyer must do more than *claim that he believes* the reporting parties were acting in bad faith or reckless disregard of the truth in making a report to the OARC about his conduct. Respondent's subjective belief is not enough. If it were, C.R.C.P. 251.32(e) would be meaningless.

Respondent has offered little more to support his claim that McLachlan and Sitter acted in bad faith or reckless disregard of

the truth than that they failed to review the stock purchase agreement Respondent and Dugan signed before they communicated with the People.[19] If such level of scrutiny were required in every instance before citizens could report perceived lawyer misconduct, few reports would be made.

■ Respondent's view of what McLachlan and Sitter's duties to investigate also fails to take into account the procedures that must be followed before *any* citizen report can be processed to a formal complaint. First, the People must conduct an initial investigation, evidence must be gathered, and the Attorney Regulation Committee must review and approve any recommendation the People make to them to file formal charges. Only then may the People file a formal complaint against a lawyer who a citizen has reported for misconduct. Here, Respondent admitted in a stipulation to the Court that he violated C.R.C.P. 251.5, Colo. RPC 8.4(c) and 1.15(c).

With reference to Respondent's claim that Sitter breached an attorney-client privilege to Respondent, the Hearing Board finds no evidence that Sitter represented Respondent in the Concordia dispute with Dugan. But even if there were such a relationship, Sitter's report of information about Respondent would not relieve Respondent of his obligations under C.R.C.P. 251.32(e).

## VII. CONCLUSION

■ One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. Upon consideration of the duties breeched, the state of mind, the injury, and the significants factors in aggravation as well as Colorado Supreme Court case law, the Hearing Board finds that Respondent should be suspended from the practice of law for a period of a year and a day.

---

17. Although there is insufficient evidence to demonstrate that Respondent suffers from a disability, the Hearing Board is nevertheless troubled by Respondent's apparent inability to objectively analyze implications of filing Claims III and IV against Sitter and McLachlan.

18. Exhibit 27.

19. Exhibit 27.

## VIII. *ORDER*

The Court therefore **ORDERS:**

1. **CHARLES WILLIAM RASURE, JR.,** Attorney Registration No. 25569, is **SUSPENDED** from the practice of law for a period of **ONE YEAR AND A DAY,** effective thirty-one (31) days from the date of this order.

2. **CHARLES WILLIAM RASURE, JR. SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.

3. **CHARLES WILLIAM RASURE, JR. SHALL** submit to an Independent Medical Examination by a doctor or other professional agreed upon with the People before applying for reinstatement.